The bill was filed in February, 1839, and charges that in 1836 the plaintiff and the defendant, James H. Tate, became partners together in making a contract with the government for carrying the mail on a certain route in Georgia for four years from the 1st day of January, 1836, at $6,150 annually; and that they were equally interested therein, each being entitled to a moiety; that they accordingly entered upon the performance of the contract, and put on the line coaches, horses, and other stock to the value of $6,091, and continued their operations up to March, 1837, when the stock and contract were sold out to one Wilson, at the price of $10,000. The bill states, that after the contract was made by the plaintiff and James H. Tate with the government, the defendant, Robert W. Tate, a brother of said James H., entered into an agreement with the said James H., by which the two brothers became partners, as *Page 176 
between themselves, the said Robert W. becoming entitled to one-half of the original share of James H., and the latter retaining the other half thereof. The plaintiff resided in Buncombe County in this State, and took no personal management of the line and property in question; but the (227) whole was under the care and management of the two Tates jointly, though chiefly that of Robert W., who received the money paid by passengers, the pay from the government, or nearly all of it, and made the sale to Wilson and received the price from him, and also made the necessary disbursements for keeping up the line by employing and paying drivers, purchasing horses, coaches, provender and other needful supplies. The bill charges that large profits were made on the contract, and the sale of the stock, as the defendant represented to the plaintiff, and as he believes, and that all the effects were received by the defendants, or one of them, Robert W. Tate, and are retained by them or him, without having paid to the plaintiff anything for his share of the profits, or even his advances of the original stock. The prayer is for a recovery and account of the partnership effects, from each of the defendants, and that the defendants may be decreed to pay the plaintiff his share thereof. The defendants answered severally, and each admits the partnership as charged in the bill to have been originally made between the plaintiff and James W. Tate, the contract with the government, the advance of stock and the line in operation, and sale to Wilson, as stated in the bill. But both of the defendants deny positively that Robert W. Tate was a partner in the contract, originally, with the plaintiff and James H. Tate, or that there was any partnership between the defendants themselves, in respect of the moiety of James H., or that the defendant, Robert W., had any interest whatever, directly or indirectly, in the contracts and property, or any concern with it, saving only as the agent of the plaintiff and of the other defendant, who, the defendants say, were the sole partners and owners of the property, entitled to the profits, and liable for the losses. The defendants state that Robert W. Tate was employed by the other defendant to conduct the business, as managing agent, at an annual salary of $700; and they admit that in that character he received and disbursed all, or nearly all, the funds of the concern. And the (228) defendant, Robert W., annexes to his answer, as a part of it, an account of his transactions for the firm of Newland Tate; which shows the receipts by him to the amount of $51,278.17, and disbursements to the amount of $51,470.34, thus leaving a balance due to him of $192.17. The defendants *Page 177 
state that the business, was a losing one, and the defendant, Robert W., insists that the loss is to be borne by the plaintiff and the defendant, James H., alone, and that he has in his hands no funds belonging to the other two parties. Replications were taken to the answers, and both parties proceeded to take a great number of depositions. At April Term, 1842, the death of Robert W. Tate was suggested. At the succeeding Term, October, 1842, the transcript states that "James H. Tate, administrator of the estate of Robert H. Tate, deceased, appears in court and acknowledges service of process reviving this suit against him as administrator aforesaid." At Spring Term, 1844, the defendant tendered a plea, that he was not the executor of the will of Robert W. Tate, deceased, nor the administrator of his personal estate within the State of North Carolina. The Court rejected the plea, and the cause was then set down for hearing, and transferred by consent to this Court with an agreement that before the hearing the interlocutory order rejecting the plea might be reheard in this court as upon a petition or otherwise.
The first question in the case is upon the plea; and we are of opinion that it was properly rejected. It came too late. We suppose, from the circumstances of the commissions to take the answers, that the defendants both resided in Mississippi, and, probably, that Robert W. Tate died there, and the other defendant may have become his administrator there. But if that be so, which we only conjecture, still the party had precluded himself from the objection, that he was not answerable as administrator, by his voluntary assumption of that character (229) in this cause eighteen months before, and submitting to have the cause revived against him as administrator. It is true, it is not entered, as the formal order of the Court, that the cause shall stand revived. But it is substantially so. The statute authorizes the reviving a suit in equity, without bill, by scire facias; the object of which is, merely to give the requisite notice. The process may be waived, and the party appear without it; and that this party did. He expressly acknowledges his representative character, appears as such, and makes no objection to a revivor, and for eighteen months takes out process to take testimony in the cause, as having been revived. He thus became a party to the suit, and waived all objection to the jurisdiction and to his accountability as administrator. *Page 178 
Upon the main question in the cause, which is the right of the plaintiff to have an account against these parties, the opinion of the Court is for the plaintiff. It is yielded, as a matter of course, that the defendant, James H., individually, as an acknowledged partner with the plaintiff, must come to an account. But it is said that Robert W. Tate was not liable, and therefore that his administrator is not, because the bill is not filed against him upon his liability as the agent of the firm, having its funds in his hands, but, as being himself one of the partners; whereas, in fact he was not a partner in any sense, neither with the plaintiff and James H. Tate, nor even with James H. Tate in respect of his moiety. If we are to judge from the manner in which the parties have taken their testimony, they must have been under a singular delusion on both sides, as to the grounds on which the plaintiff could have relief against Robert W. Tate. The plaintiff has taken many and very voluminous depositions to the acts and declarations of both the defendants, tending to establish that all three of the parties were originally copartners, or became so in this contract by subsequent agreement between the three, apparently under the belief that such a state of things was necessary to entitle the plaintiff to a decree against Robert W. Tate. But that is a mistake, as a (230) general principle of law; for that the defendant was liable to account, as having received the funds, either as the agent of the firm really existing and merely as agent, without any interest in himself; or as such agent, having also an interest, under a separate agreement between him and one of the parties, in the share of that partner. But, in truth, such evidence of a general partnership between the three can not avail the plaintiff in the present suit; because the bill specially excludes the idea of a partnership of that kind, and states that James H. Tate was the sole partner of the plaintiff, and that the interest of Robert W. Tate arose by an agreement between the brothers alone, and extended to the one-half of James H. Tate's moiety. On the other hand, the defendants have taken as many depositions to prove, some that Robert W. was agent only for the firm, consisting of his brother and the plaintiff, and others, that he was not a general partner with both of the other parties, but was then agent and concerned in interest in his brother's share only, by a private agreement between those two alone, as if he could be held liable to account with the other defendant, to the plaintiff, only in case he were a general partner.
We are not prepared to say that if Robert W. Tate were merely the agent, the bill is not so founded as to entitle the *Page 179 
plaintiff to a decree against him to account, for it distinctly charges his general agency and management and sale of the property and receipt of the funds; and it is not perceived why the plaintiff's rights arising from the facts should be impaired by untruly stating further that, besides being agent, that person had an interest under his brother, and that he had also acted in the business by virtue of that interest.
But upon the question of fact, whether Robert W. Tate had an interest and the nature of it, the opinion of the Court is, that the statements of the bill are really according to the truth, as established by the evidence. The plaintiff has proved a great variety of declarations of both of the defendants, when they were together and apart, and also conversations between the plaintiff and the defendants, from which the witness (231) collected, that all three of these persons were recognized by each of them as partners with each other; and so, perhaps, we might also conclude, if we were confined to that evidence itself. But the truth no doubt is, that the parties, knowing that each had an interest, spoke of Robert W. Tate as an owner of a part of the line, as well as themselves, without being particular to designate the origin and nature of the respective interests, and from that the witnesses naturally enough concluded, that they were partners by joint agreement, whereby the plaintiff was half owner, and the other two a fourth each. But the bill admits that there was no joint agreement, and states that Robert W. Tate became his brothers partner in his share, and, by virtue thereof, and by agreement with the other parties, became the general manager of the business, and got the effects of the firm into his hands. And that, in the opinion of the Court, is the effect of the weight of the evidence. It clearly establishes that Robert W. Tate claimed to have an interest, as owner in some way or to some extent, and that other parties recognized such interest in him. Though many witnesses thought, from indefinite expressions dropped from the several parties, that Robert's interest was that of a general partner, yet that was but an impression derived from loose declarations, not descending into particulars. Where the origin and nature of Robert's interest by itself became distinctly the subject of observation, the parties speak of it, as represented in the bill, to consist of one-fourth part derived out of the share of his brother by an agreement between them alone, but known to the plaintiff and recognized by him. To that extent, Robert W. was the assignee of James H. Tate; and there can be no doubt that as a person having an interest, and also having the fund, he may be called on to account to the plaintiff. Thus accounting, it is true, he *Page 180 
will not be directly liable to the plaintiff for any losses sustained, if any there be, unless by his own fault as agent; because, although he might be liable for the contracts of the firm to third persons as (232) a partner, yet he was not a partner with the plaintiff, as between themselves, to share the profit or loss. That was between the plaintiff and James H. Tate; and to the latter, Robert W. was to look for a portion of his profits or make up a portion of his loss. For the same reason, to his case is not applicable the principle, that, except by agreement, an acting partner can not claim compensation beyond his share of the profits, for the rule proceeds on the ground that the contract of partnership stipulates what each is to contribute and receive, and, therefore, it can not embrace a case in which there is no contract of partnership between the plaintiff and the party rendering a service to the firm. No doubt, therefore, Robert W. Tate will be entitled to reasonable remuneration, as against the plaintiff, for his time and labor, or such as may have been fairly agreed on between him and the other parties. There must, therefore, be the usual decree for an account against the defendant in his own right, and as administrator of Robert W. Tate, and also, unless the defendant shall admit sufficient assets of his intestate, there must be an inquiry as to the assets which the defendant has or ought to have.
PER CURIAM. DECREED ACCORDINGLY.
(233)